## INMATE HOUSING AGREEMENT

### among

### MISSISSIPPI DEPARTMENT OF CORRECTIONS

### JEFFERSON – FRANKLIN COUNTY REGIONAL CORRECTIONAL FACILITY
### through
### JEFFERSON COUNTY, MISSISSIPPI
### and
### SHERIFF OF JEFFERSON COUNTY, MISSISSIPPI

This **INMATE HOUSING AGREEMENT** is made and entered into as of the 1st day of July, 2021, by and among the **MISSISSIPPI DEPARTMENT OF CORRECTIONS** ("MDOC") located at 301 North Lamar Street, Jackson, Mississippi 39201 and **JEFFERSON-FRANKLIN COUNTY REGIONAL CORRECTIONAL FACILITY** ("Correctional Facility") through **JEFFERSON COUNTY, MISSISSIPPI**, a political subdivision of the State of Mississippi ("County"), located at 1483 Main Street, Fayette, Mississippi 39069 and the **SHERIFF OF JEFFERSON COUNTY, MISSISSIPPI** ("Sheriff"), 279 Highway 33, Fayette, Mississippi 39069. The MDOC, Correctional Facility, County and Sheriff will be referred to jointly as the "Parties."

### WITNESSETH:

**WHEREAS**, Miss. Code Ann. §47-5-931, *et seq.*, as amended (the "Act"), provides that MDOC can enter into contracts with counties to provide housing and to house additional State Inmates as provided therein; and

**WHEREAS**, the Act provides for the management of State Inmates in correctional facilities owned by counties; and

**WHEREAS**, MDOC cannot currently accept and house all of the individuals assigned to it because of the lack of facilities under the control of MDOC; and

**WHEREAS**, as a result thereof, MDOC needs additional bed space for housing State Inmates and is requesting the County to provide the additional bed space; and

**WHEREAS**, this Agreement is entered into pursuant to and in accordance with the Act; and;

**NOW, THEREFORE**, for and in consideration of the promises and the mutual covenants hereinafter contained, and subject to the conditions herein set forth, the parties hereto covenant, agree, and bind themselves as follows:

1

## EXHIBIT 11

## ARTICLE 1
## DEFINITIONS

ACA - shall mean the American Correctional Association.

ACA Standards - shall mean the ACA Standards for Adult Correctional Institutions (5th Edition) (as same may be modified, amended, or supplemented in the future) published by ACA.

Additional Services - means those additional operational and management services required to be furnished by the Correctional Facility because of the changes in the ACA Standards, laws, government regulations, or judicial decision which cause an increase in the cost of operating and managing the Correctional Facility.

Act - shall mean Miss. Code Ann. §47-5-931, *et seq.*, as amended.

Annex - means such building or facility utilized by the County for Inmates of the County or other Inmates of other counties, the United States Government or the State not assigned to the Correctional Facility.

Contract - means this Agreement.

Correctional Facility - means Jefferson-Franklin County Regional Correctional Facility, the correctional building(s) constructed in Jefferson County, Mississippi, plus any expansions made to said buildings from time to time and its grounds.

County - means Jefferson County, Mississippi as the host County of the Regional Correctional Facility.

Department - means the Mississippi Department of Corrections.

Force Majeure - means the failure to perform any of the terms and conditions of this Agreement resulting from acts of God, strikes, lockouts, riots, acts of war, epidemics, governmental regulations superimposed after the fact, fire, earthquakes, floods, or other natural disasters.

Inmate - shall include any person committed in accordance with applicable laws of the State of Mississippi, and assigned to the Correctional Facility for incarceration therein pursuant to this Agreement.

Inmate Day - means each 24-hour period an Inmate is admitted to the Correctional Facility, plus the first day of incarceration, but not the last.

Inmate Information System - means that software developed by the County for use at the Correctional Facility.

MDOC - means the Mississippi Department of Corrections.

Jefferson-Franklin County Inmate Housing Agreement 202:

2

**Reimbursable Medical Costs** - means those medical, mental health, and dental costs payable in whole or part by MDOC, as set forth herein.

**Sheriff** - shall mean the Sheriff of Jefferson County.

**Standards** - means the American Correctional Association Standards for the Adult Correctional Institutions, with any deviations or waivers from those Standards in design or management which are necessary for the operation of this Correctional Facility. When differences exist between court requirements and the ACA Standards, the higher standard, as defined by MDOC, will prevail.

**State** - means the State of Mississippi and/or the Mississippi Department of Corrections, as applicable.

**State Inmates** - means persons convicted of a crime and sentenced to the custody of the Mississippi Department of Corrections for a term of confinement of more than one (1) year's duration.

**Use of Force** - means force as contemplated by the ACA, Adult Correctional Institution's Standards, as the same may be amended, from time to time or as described in Miss. Code Ann. § 47-5-1215, as amended, the Sheriff shall maintain and manage the Correctional Facility in compliance with applicable federal and state laws, court orders and ACA Standards for Adult Correctional Institutions. If there exists a difference between the above standards and/or laws, the higher standards defined by MDOC will be followed. All official communications shall be managed according to policies to be adopted by all parties.

**Warden** - means the person selected by the Sheriff and approved by MDOC and to manage the Correctional Facility.

## ARTICLE II
## TERM OF THE AGREEMENT

**SECTION 2.1  Term.** The term of this Agreement shall be for a period of five (5) years commencing on July 1, 2021 and ending on June 30, 2026.

## ARTICLE III
## COMPENSATION AND ADJUSTMENTS

**SECTION 3.1  The County Management Per Diem Payment.** MDOC shall pay, in accordance with Miss. Code Ann. §47-5-933, as amended, from any immediately available funds to the County the following:

(a)  MDOC shall pay twenty-five dollars and sixty-six cents ($25.66) per State Inmate per day for the Operation/Management for a capacity of up to two hundred seventy (270) State

Jefferson-Franklin County Inmate Housing Agreement 2021

3

Inmates and twenty-one dollars and twenty-six cents ($21.26) per State Inmate for each State Inmate over two hundred seventy (270);

    (b)   All reimbursable costs as set forth in §5.7; and

    (c)   As authorized by the Miss. Code Ann. §47-5-933, an inflation factor of three percent (3%) may be included annually, **if appropriated by the Mississippi State Legislature**. In no event shall any regional facility's per diem rate exceed thirty-one dollars ($31.00) per State Inmate. The State shall retain responsibility for medical care for State Inmates to the extent that is required by law.

**SECTION 3.2 Billing.** The County shall submit to MDOC a monthly statement for the number of State Inmates assigned to the Correctional Facility and for other expenses incurred which are the responsibility of MDOC. All undisputed amounts payable under this Agreement shall be payable within forty-five (45) days of receipt of the invoice. Reimbursable expenses shall be billed one (1) month in arrears and will be due forty-five (45) days after receipt by MDOC. Payments not in dispute and not received by said date shall be subject to interest as provided by State law.

**SECTION 3.3 Billing Disputes.** If the amount to be paid to the County is disputed by MDOC, then MDOC shall immediately advise the County of the basis for the dispute and, in the manner provided above, pay the amount of such invoice which is not in dispute.

**SECTION 3.4 Utilities.** The County shall pay all utility charges, incurred or imposed with respect to the Correctional Facility, from operating revenue and per diem.

**SECTION 3.5 Non-Appropriation.** In the event the Mississippi State Legislature fails to appropriate sufficient moneys for MDOC to pay all of its obligations under this Agreement for any fiscal year, the term of this Agreement shall, at the option of MDOC, expire effective as of the last day of the fiscal year for which sufficient funds for such purpose were appropriated. This Agreement shall remain in full force and effect for succeeding fiscal years notwithstanding any non-appropriation for any prior fiscal year. MDOC agrees to make an annual good faith effort to have appropriated funds sufficient to pay all amounts due under this Agreement for each fiscal year, and this Agreement is only executory to the extent that funds are so appropriated. In the event sufficient funds to pay all obligations of MDOC hereunder during any fiscal year are not so appropriated, such inability shall not constitute a default under this Agreement. If the funds appropriated in any such legislation are not at least equal to the amounts specified above, or if no funds are appropriated, MDOC shall notify the County in writing within ten (10) business days.

Defendants 001925

## ARTICLE IV
## STATE INMATES

**SECTION 4.1 State Inmate Housing.** The County agrees to provide housing at the Correctional Facility for State Inmates, as provided in the Act. In the event that the Correctional Facility is expanded and/or more bed space becomes available, the County and MDOC, with prior statutory or legislative authority, may agree to house as many additional State Inmates as the expansion and/or additional bed space provides.

**SECTION 4.2 Assignment of State Inmates.** MDOC agrees to select State Inmates who are classified as minimum custody, medium custody or protective custody according to its classification system(s). Simultaneous with or prior to the transfer of any State Inmate to the Correctional Facility, MDOC will furnish to the County the following documentation:

(a) Complete information and documentation relating to the State Inmate's case history, physical, mental and clinical records that is in the custody of MDOC. Such physical, mental and clinical records are being provided to the County to facilitate the coordination of healthcare for State Inmates;

(b) Applicable judicial and administrative rulings; the sentence or sentences for which the State Inmate is confined;

(c) Orders including transfers, relating or pertaining to the State Inmate;

(d) Any other requested information which will assist the County in performing its duties through the Sheriff and the Warden;

(e) The County, the Sheriff, and the Warden agrees that all State Inmate records are to remain confidential and are not to be released without the approval of MDOC, unless otherwise required by applicable laws, rules or regulations; and

(f) Upon release or transfer of a State Inmate from the Correctional Facility, all of said State Inmate's records furnished by MDOC will be promptly returned to MDOC.

**SECTION 4.3 Delivery and Release of State Inmates.** Upon proper notification by MDOC and an authenticated copy of the mittimus or other commitment order, or any other official papers or documents authorizing confinement, the County will transport the State Inmate from any facility to the Correctional Facility. Once the County has received the proper Court Orders and/or MDOC documentation regarding a State Inmate's release from the Correctional Facility, then the County will deliver the State Inmate back to MDOC's designated facility.

**SECTION 4.4 Transfer of Funds.** MDOC will provide State Inmate funds due to the transferred State Inmates to the County to be credited to each State Inmate's account within twenty-four (24) hours. Upon State Inmate's return to MDOC, the County through the Sheriff

Jefferson-Franklin County Inmate Housing Agreement: 2021

Defendants 001926

will immediately transfer funds due the State Inmate back to MDOC to be credited to each State Inmate's account. All funds and transactions shall be subject to review by MDOC at any time.

**SECTION 4.5 Medium Custody.** Medium Custody or "B" Custody refers to a medium security status where the Inmate has displayed a desire to be considered responsible and has progressed to the point where he does not need constant supervision or security control in his work assignment. Medium Custody or "B" Custody Inmates are housed in medium security units and are eligible for all regular work assignments and activities within the secure perimeter of the unit. Said Inmates must be supervised by staff when engaging in activities outside their housing unit.

**SECTION 4.6 Right of Refusal.** MDOC agrees that it will not send any State Inmates to the Correctional Facility which have tested positive for the HIV virus or have been diagnosed with AIDS, and for any such State Inmate so diagnosed while in the Correctional Facility, MDOC agrees to permit the Sheriff to immediately return said State Inmates to a MDOC facility.

## ARTICLE V
## OPERATION OF CORRECTIONAL FACILITY

**SECTION 5.1 General Duties.** The Warden shall maintain and manage the Correctional Facility in compliance with applicable federal and states laws, court orders and ACA Standards for Adult Correctional Institutions. If there exists a difference between the above standards and/or laws, the higher standard as defined by MDOC will be followed. All official communications shall be managed according to policies to be adopted by all parties.

The Warden will confine the State Inmates sent by MDOC, give them reasonable and humane care and treatment, provide appropriate programs, treatment and training, supervise them, and maintain discipline and control consistent with constitutional standards. The Sheriff will provide no special privileges to the State Inmates and shall see that the sentences of the committing court in the State are faithfully executed.

**SECTION 5.2 Admitting and Booking.** The Warden shall be responsible for admitting and booking State Inmates placed in the Correctional Facility. State Inmates will be admitted to the Correctional Facility under the terms of this Agreement upon receipt of the appropriate MDOC documentation.

**SECTION 5.3 Safety and Emergency Procedures.** The Warden shall maintain MDOC approved policies and procedures to provide for emergencies such as labor disputes, riots, fire, civil disaster and pandemics. The Sheriff shall operate and maintain the Correctional Facility in compliance with applicable federal, state and local safety and fire codes and in accordance with ACA Standards.

**SECTION 5.4 Sanitation/Hygiene/Accommodations.** The Warden will implement policies and procedures in conformity with applicable ACA Standards, regulations, laws and codes mandated by County, state and federal governmental agencies to ensure that the Correctional Facility meets sanitation standards.

Jefferson-Franklin County Inmate Housing Agreement 2022

6

**SECTION 5.5 Recreation.** The Warden will provide exercise and other activities in compliance with ACA Standards. The recreational program will include both indoor and outdoor activities.

**SECTION 5.6 Counseling/Mental Health.** The Warden will provide access to counseling and mental health programs and services including, but not limited to, alcohol and drug treatment, chaplaincy, pre-release, literacy, individual counseling and other programs and services necessary in order to comply with applicable MDOC standards. The counseling and mental health program will be supported by case management procedures to ensure the State Inmate's progress is properly documented and recorded.

**SECTION 5.7 Medical/Dental.**

(a)     MDOC through its contracted healthcare vendor will provide medical, optometry, pharmaceutical and dental services in accordance with ACA standards, MDOC standards and applicable federal, state, and local laws and regulations. These services will provide State Inmates with basic medical screening to be performed upon admission to the Correctional Facility prior to being placed in the general population or housing area. The healthcare vendor will also provide sick calls and dental services within the Correctional Facility in those cases when the health of the State Inmate would otherwise be adversely affected. If the County is required to provide healthcare services to the State Inmates, all costs shall be reimbursed to the County by MDOC as required by Miss. Code Ann. §47-5-901. MDOC shall remove from the Correctional Facility a State Inmate, after determination by the Warden with concurrence by MDOC, which concurrence shall not be unreasonably withheld, that such State Inmate is insane.

(b)     The Warden shall be responsible for emergency healthcare services provided at the Correctional Facility. Said services shall include twenty-four (24) hour emergency medical and dental services which costs shall be reimbursed to the County by MDOC for State Inmates as required by Miss. Code Ann. §47-5-901.

(c)     Except in an emergency, when a State Inmate is to be hospitalized or scheduled for outpatient surgery which will exceed $500.00, the Sheriff will notify the MDOC Medical Director or his/her designee of the nature of the illness or medical condition, the recommended course of treatment and the estimated costs thereof. MDOC Medical Director or his/her designee may authorize treatment outside the Correctional Facility at MDOC's expense, or at MDOC's option, have State Inmate returned to its jurisdiction for the required medical, mental health, or dental treatment. All costs shall be reimbursed by MDOC to the County for State Inmates as required by Miss. Code Ann. §47-5-901.

(d)     In emergency situations, the Warden may make appropriate arrangements for emergency medical treatment without first obtaining MDOC's approval. The Sheriff will notify the MDOC Medical Director or its designee as soon thereafter as practicable.

(e)     The County shall follow approved notification procedures established by the Sheriff and MDOC.

Jefferson Franklin County Inmate Housing Agreement 2020

(f)    The County must annually submit to MDOC proof that it has met ACA Standards, MDOC standards, court orders and applicable state and federal laws provided however, such time may be extended if the County can provide evidence that such approval was not obtained due to lack of cooperation by ACA

(g)    The Sheriff shall comply with MDOC Medical Division policies and procedures and will provide a substance abuse treatment program consistent with that offered by MDOC for a similar population.

(h)    The Correctional Facility shall have a medical clinic/area within the Correctional Facility, and the costs of which shall be borne by MDOC.

(i)    HIPAA Compliance. With respect to any Protected Health Information (PHI) or otherwise confidential health information received by the County, the County agrees to comply with the provisions of the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and privacy provisions.

SECTION 5.8  Food Service. The Warden will provide food services in accordance with ACA Standards. At a minimum, the food service operation shall provide a meal schedule, special diets meeting medical and religious requirements and three (3) meals served at regular times during each twenty-four (24) hour period. There shall be no more than fourteen (14) hours between the evening meal and breakfast. The Sheriff will provide for at least 2900 calories per day per State Inmate, as certified by a nutritionist for the County and consistent with applicable MDOC policies and procedures.

SECTION 5.9  Clothing and Laundry. The Warden shall furnish all State Inmate clothing and replacement clothing. The Warden will provide laundry services for the State Inmates. Clothing shall be in accordance with MDOC policies and procedures, and applicable State law.

SECTION 5.10  Transportation. The Warden shall provide transportation services for the State Inmate's delivery from an MDOC facility to the County's Correctional Facility, upon release the Warden will provide transportation from the County's Correctional Facility back to MDOC. The Warden shall also provide transportation for health needs of a State Inmate based on each occurrence and for transporting supplies to the Correctional Facility. If MDOC is required to provide transportation, all costs of such transportation will be deducted from the County's per diem payment.

SECTION 5.11  State Inmate Banking/Canteen System. The Warden will provide a banking/canteen system in accordance with ACA Standards and Mississippi state law. If the Correctional Facility participates in the MDOC banking/canteen system, all proceeds generated by the banking/canteen system for State Inmates shall be retained in the MDOC's Inmate Welfare Fund for the State Inmate's benefit.    If the Correctional Facility utilizes a private entity for banking/canteen system, all proceeds generated by the banking/canteen system for State Inmates shall be retained in the County's Inmate Welfare Fund for the State Inmate's benefit. MDOC shall have the right to approve banking/canteen system vendor(s) and said records shall be

Defendants 001929

subject to audit by MDOC. The private entity shall follow ACA Standards and State law when establishing and maintaining banking/canteen system for the State Inmate's benefit.

**SECTION 5.12  Mail.** The Warden will provide delivery of mail to State Inmates in the Correctional Facility in compliance with ACA Standards, MDOC policies and procedures and applicable state or federal laws.

**SECTION 5.13  Religion.** The Warden will provide reasonable space within the Correctional Facility for religious services to be held and provide programs in compliance with applicable ACA Standards, state and federal laws and applicable court orders.

**SECTION 5.14  Correctional Facility Supplies.** The Warden will provide Correctional Facility supplies, which include general hygiene items, office supplies and building support items such as cleaning supplies, mops, buckets, linens, paper towels, etc.

**SECTION 5.15  Grievance Procedure.** The Warden will provide State Inmates with a means to pursue grievances in accordance with MDOC policies and procedures, federal and state laws, rules, regulations and court orders. If applicable, MDOC will provide appropriate forms for this purpose.

**SECTION 5.16  Security and Control.** The Warden shall provide security and control at all times in accordance with ACA Standards and Correctional Facility's policies and procedures.

**SECTION 5.17  Visitation.** The Warden shall provide physical space, furniture, equipment and supervision for visitation in accordance with applicable ACA Standards and MDOC policies and procedures.

**SECTION 5.18  Access to Courts.** The Warden agrees to insure that State Inmates have adequate access to the courts, consistent with applicable laws, court orders, MDOC policies and procedures, rules and regulations of the State of Mississippi and constitutional standards.

**SECTION 5.19  Discipline** The Warden shall impose discipline utilizing MDOC policies and procedures, rules and regulations of the State of Mississippi in accordance with constitutional standards. However, nothing therein will be construed as preventing the Warden from enacting rules and regulations which shall be binding on the State Inmates. Said rules and regulations shall be approved by MDOC.

**SECTION 5.20  Use of Force.** The Sheriff's employees are authorized to use force only in accordance with applicable laws, MDOC policies and procedures and rules and regulations of the State of Mississippi. Following any use of force, an incident report shall be prepared and MDOC shall be notified pursuant to Section 5.23(d) by way of report.

**SECTION 5.21  Good Time/Gain Time.** The Sheriff or the Warden shall provide specific information to MDOC in a timely manner in accordance with applicable laws, MDOC policies and procedures and rules and regulations of the State of Mississippi for the purpose of award or forfeiture of good time/gain time. The final decision on awarding or forfeiture of good

Jefferson-Franklin County Inmate Housing Agreement 2021

9

time/gain time rests with MDOC, although the Sheriff or the Warden shall be responsible for providing information as to performance and behavior of State Inmates.

SECTION 5.22 **Sentence Computation.** The Sheriff or the Warden shall provide MDOC with essential data and information relating to sentence computation in accordance with MDOC policies and procedures, rules and regulations. The final decisions with respect to sentence computation rests with the State. MDOC may furnish adjusted release dates to the Warden on a monthly basis, but in no event less than five (5) business days prior to the adjusted release date.

SECTION 5.23 **Records and Reports.**

(a)     The Sheriff or the Warden shall maintain State Inmate institutional records in accordance with MDOC's record keeping practices and shall adhere to applicable court orders, federal, state and local laws governing confidentiality. Upon request, all records, reports and documents will be made available immediately to MDOC, the Attorney General for the State of Mississippi and its approved employees and/or agents for review. Upon termination of confinement at the Correctional Facility, the Sheriff or the Warden will forward a complete copy of the State Inmate's records to MDOC.

(b)     MDOC shall furnish to the Sheriff or the Warden, for and on behalf of the Sheriff, each State Inmate's Institutional record (field jacket), medical record and such other records as the County through the Sheriff may request and/or MDOC has pertaining to the State Inmate. All State Inmate records are to remain confidential and are not to be released without approval of MDOC, unless otherwise required by applicable laws, rules or regulations.

(c)     Within ninety (90) days following the receipt of a State Inmate from MDOC and thereafter at six (6) month intervals, the Sheriff or the Warden will report to MDOC on the State Inmate's progress, conduct, adjustment, and recommended retention at the Correctional Facility or return to MDOC.

(d)     The Sheriff or the Warden will send to MDOC all incident reports within one (1) week of the incident. However, for reports involving escapes, use of deadly force, use of force in which a State Inmate or staff is injured because of an escape, use of deadly force or use of force which requires medical treatment (treatment in excess of first aid), major disturbances or death of an State Inmate, the Sheriff or the Warden will send such incident reports to MDOC immediately or as soon as reasonably possible after the incident.

(e)     The Sheriff or the Warden shall provide MDOC access to its Inmate Information System.

SECTION 5.24 **Return of State Inmates to MDOC.**

(a)     Upon demand by MDOC, the Sheriff or the Warden will deliver to the custody of MDOC any State Inmate in accordance with applicable laws of the State of Mississippi.

Jefferson-Franklin County Inmate Housing Agreement 2020

10

(b)    Any State Inmate who is released by court order, or is placed on probation or parole shall immediately be returned to MDOC, on behalf of the State, or to such State as has agreed to take the State Inmate at the Correctional Facility into that State's care, custody and control pursuant to the Interstate Compact on Parole.

## SECTION 5.25  State Inmate Work.

(a)    The Sheriff or the Warden shall maintain policies and procedures which outline and describe those State Inmates who qualify to work and/or participate in programs of occupational training at the Correctional Facility, in accordance with relevant policies of MDOC. The County will provide space for Mississippi Prison Industries Corporation.

(b)    State Inmates shall be required to work or participate in educational or vocational programs consistent with MDOC's policies and procedures. The Sheriff or the Warden may not require a State Inmate to participate in any training, industrial or other work when said assignment is contrary to the laws of the State of Mississippi. Except through Mississippi Prison Industries Corporation, State Inmates shall not work for private entities or on private property. State Inmates may work on state, federal, or local governmental projects.

(c)    The Correctional Facility will abide by all federal and state laws and all MDOC policies and procedures regarding the sale of Inmate goods.

(d)    On-the-job certification for training programs will be included in the inmate work program.

## SECTION 5.26  Classification.

(a)    The Sheriff or the Warden may administratively transfer any State Inmate to a higher security level for a period not to exceed seventy-two (72) hours without an administrative hearing and any such action taken by the Sheriff or the Warden shall be reported immediately to MDOC.

(b)    MDOC shall have sole responsibility and authority for the classification of State Inmates and assignment of State Inmates to, and removal of State Inmates from, the Correctional Facility.

## SECTION 5.27  Hearings. The Sheriff or the Warden will provide adequate facilities for meetings and hearings by appropriate State authorities, including MDOC, the Parole Board and representatives of the Mississippi Attorney General's Office, and office space for legal representative of MDOC.

## SECTION 5.28  Death of a State Inmate.

(a)    In accordance with applicable laws of the State of Mississippi and MDOC policies and procedures, the Sheriff or the Warden will complete any medical examination required and immediately report to the State the death of any State Inmate, furnish all information requested

Jefferson-Franklin County Inmate Housing Agreement 2024

11

by the State and follow the instructions of the State with regard to disposition of the body. The Sheriff or the Warden will notify the relatives of the deceased State Inmate, in compliance with MDOC policies and procedures.

(b)    The County, the Sheriff or the Warden shall be responsible for any and all costs/expenses associated with the autopsy, burial, disposition or transportation related thereto of the State Inmate's body.

(c)    The provisions of this section will not affect the liability of any relative or other legally liable person for the disposition of the deceased or for any expenses therewith.

(d)    The Sheriff or the Warden will forward to MDOC a certified copy of the death certificate and the State Inmate's file and medical records.

SECTION 5.29  Public Information and Publicity.

(a)    The County, the Sheriff or the Warden will promptly refer all requests for public information to MDOC public information officer or to his/her designee.

(b)    The County, the Sheriff nor the Warden will release information regarding State Inmates except to the extent required by applicable federal, state or local laws or court orders.

(c)    Nothing in this section prevents legitimate use of any information regarding the State Inmates by prison or law enforcement personnel, in the event of an escape.

SECTION 5.30  Legal Proceeding. The State will defend any post-conviction action, including appeals and writs of habeas corpus, by a State Inmate challenging the underlying judgment of conviction or the calculation of the sentence imposed. If the parties and/or his/her officers, agents or employees are sued on claims by ore related to State Inmate, each party will bear their own costs and expenses incurred defending such claims.

SECTION 5.31  Inspections. Employees/agents designated by MDOC, the Governor of the State of Mississippi, members of the Mississippi Legislature and all members of the Executive and Judicial departments of the State, may inspect the Correctional Facility, at all reasonable times, to determine if it maintains standards of care and discipline consistent with those of MDOC, that all State Inmates therein are treated equitably, regardless of race, religion, color, creed or national origin and that all other terms of this Agreement are being followed. The State may, at all reasonable times, investigate in person, or by record review, all incidents or reported conditions of confinement involving the State Inmates. The County and/or the Sheriff agree to cooperate fully with all such investigations.

SECTION 5.32  Telephone. The County will provide telephone service for State Inmates which is consistent with MDOC's policies and procedures. State Inmates telephone service shall be provided on a basis comparable to MDOC's current Inmate telephone service contracts. The proceeds from the telephone service shall be deposited into the MDOC Inmate Welfare Fund.

Defendants 001933

**SECTION 5.33 Escapes.** In case of escape from the Correctional Facility, the Sheriff or the Warden will report the escape to MDOC immediately and will use all reasonable means to recapture the State Inmate, at its expense. If a State Inmate escapes from the Correctional Facility and is thereafter found outside of Mississippi, it will be the responsibility of MDOC to extradite the State Inmate. The costs incurred by MDOC in conjunction with said extradition, shall be reimbursed by the County to MDOC. The County shall reimburse the MDOC for all directly attributable costs incurred by the MDOC in attempting to recapture a State Inmate escaped from the Correctional Facility. Said reimbursement shall be for all out of pocket costs of MDOC that would otherwise not be incurred and shall include, but not be limited to, employee overtime, food, lodging and transportation. In the Emergency Procedures used by the Sheriff, the Mississippi Highway Patrol and the MDOC will be notified immediately or as soon as possible according to the list of notifications.

**SECTION 5.34 Maintenance of the Correctional Facility.** The County shall maintain a preventive maintenance, repair and replacement program on plumbing, electrical, mechanical, wiring, heating and other appliances.

**SECTION 5.35 Educational and Vocational Programming.** The County shall provide adequate space for educational and vocational programs, including programs for the illiterate and General Education Development (GED) certificate level programs. The County shall provide these programs in compliance with ACA standards and MDOC policies and procedure. All educational classrooms shall meet the relevant criteria established by the Mississippi Department of Education. The educational curriculum shall meet the Mississippi Department of Education's requirement for adult basic education.

## ARTICLE VI
## EMPLOYEES

**SECTION 6.1 County Employees.** The County, the Sheriff and their employees are associated with the State and MDOC only for the purpose(s) and to the extent set forth in this Agreement. With respect to the performance of the services set out herein, the County and the Sheriff are and shall be independent and, subject to the terms of this Agreement, shall have the sole right to manage, control, operate and direct the performance of the details of their duties under this Agreement. The County's agents and employees shall not accrue leave, retirement, insurance, bonding, use of the State vehicles or any other benefit afforded to the employees of the State as a result of this Agreement but shall be employees of the County and serve at the will and pleasure of the Warden. The Warden shall serve at the will and pleasure of the Sheriff. The Sheriff, with the advice and consent of MDOC, may enter into an agreement with the Warden whereby the Warden will agree to supervise the operation of the Correctional Facility as an independent contractor and not as an employee of the Sheriff or County.

**SECTION 6.2 Contract Monitor.** A contract monitor will be employed by the MDOC to assess and document areas of both contract conformance and non-conformance. The monitoring process shall include, but not be limited to, the following activities: (1) ongoing assessment of the Facility operations; (2) review of unusual incident reports (attempted escapes, disturbances, assaults, etc.); (3) review of inmate movement reports; (4) interview inmates and

Jefferson-Franklin County Inmate Housing Agreement 2021

13

Defendants 001934

staff; (5) periodic audits of inmate files; (6) review of fire, health, safety and sanitation inspection reports; (7) review staffing levels and (8) review facility maintenance. The contract monitor will notify the county of any material violations of this agreement and specify the corrective action that should be taken. The contract monitor will also assess and document the County's efforts to rectify the situation. The total cost of the contract monitor, including salary, benefits, and all expenses shall not exceed $45,000.00 annually. The parties understand and agree that the contract monitor shall also monitor contracts at two other regional correctional facilities. The County shall reimburse the MDOC for one-third (1/3) of the total cost of the contract monitor up to a maximum of $15,000.00 annually.

**SECTION 6.3 Sheriff.** The Sheriff, with the advice and consent of the County and MDOC, shall appoint a Warden to supervise the operation of the Correctional Facility. In operating the Correctional Facility, the Warden shall be responsible for carrying out the obligations of the Sheriff and the County as set forth in this Agreement. MDOC may, at any time, evaluate the operation of the Correctional Facility and, if after an evaluation, it is determined the Warden is not operating the Correctional Facility to the satisfaction of MDOC, then MDOC may ask the Sheriff to replace the Warden in which case, the Sheriff shall replace the Warden. In the event that the Sheriff replaces the Warden for whatever reason, the appointment of a new Warden will be on the advice and consent of the County and MDOC. In the event MDOC determines for good cause shown that the Sheriff and Warden are unable or unwilling to operate the Correctional Facility, then in that event MDOC may designate a management company to conduct the day-to-day operations of the Correctional Facility in lieu of the Warden with the costs of engaging said management company to be paid by the County from the per diem per State Inmate paid to the County by MDOC. If the Sheriff, or the County elects to contract for professional services, such services are to be paid by the County. Other than those services authorized by the Act, the Sheriff and/or the County must obtain the consent of the MDOC prior to contracting for such services. MDOC shall not be responsible for payment, above the per diem per State Inmate, of any professional services unless agreed to in advance.

**SECTION 6.4 Personnel.**

(a)    The Sheriff or Warden shall provide sufficient professional personnel to deliver twenty-four (24) hour care and supervision to State Inmates, as well as administrative and support service personnel for the overall operation of the Correctional Facility, in accordance with ACA standards. Prior to employment with the Sheriff, applicants shall be subjected to a thorough background check and shall comply with MDOC policies and procedures relating thereto. During employment, selected employees will be drug tested on a random basis pursuant to the County policy. At no time shall the County employ a person who is simultaneously employed by MDOC or who is a former MDOC employee without written permission of MDOC.

(b)    The Sheriff shall use its best efforts, under the circumstances, to fill any vacant staff position within thirty (30) days.

**SECTION 6.5 Training.** The Sheriff shall provide an orientation and training program for all employees. Said orientation and training program shall meet or exceed the level of training provided by MDOC and will comply with the training requirements of ACA Standards.

Jefferson-Franklin County Inmate Housing Agreement 2021

14

**SECTION 6.6 Testing for Contagious Diseases.** The Sheriff shall meet all requirements of the State's rules, regulations, policies and procedures, and mandates of the State Board of Health and policies and procedures of the State's Bureau of Preventive Health.

**SECTION 6.7 Background Check.** MDOC shall cooperate with the County in conducting criminal checks on potential employees of the County and its subcontractors.

## ARTICLE VII
## IMMUNITIES AND INSURANCE

**SECTION 7.1 Sovereign Immunity.** The County, Sheriff, MDOC, and State mutually acknowledge and claim immunity from suit at law or in equity to the extent provided by law and as specifically set forth in Miss. Code Ann. § § 11-46-1. *et seq.*, as amended.

**SECTION 7.2 Liability Insurance.** Intentionally omitted.

**SECTION 7.3 Fire and Casualty Insurance.** The MDOC hereby covenants and agrees as follows: (1) this Agreement shall not terminate in the event of a partial casualty loss in connection with the Correctional Facility in which part of the Correctional Facility remains operational; and (2) MDOC shall continue to house State Inmates and make payments under this Agreement for State Inmates housed in the operational portion of the Correctional Facility. The County shall maintain or cause to be maintained an adequate plan of fire and casualty insurance providing coverage for the full replacement value of the Correctional Facility in an amount of at least $5,100,000.00 and in addition. Correctional Facility operational costs during a total or partial casualty loss.

**SECTION 7.4 Certificate of Insurance and Cancellation.** During the term of this Agreement, the County shall maintain liability of insurance. The County shall submit a Certificate of insurance to MDOC, naming the State as an additional insured and entitling the State to all notices issued under such policy.

**SECTION 7.5 Workers' Compensation and Unemployment Insurance Compensation.** The County shall maintain such workers' compensation insurance and unemployment compensation as required by the laws of the State of Mississippi. MDOC shall be provided a copy of the Certificate of Insurance.

**SECTION 7.6 Defense/Immunity.** By entering into this Agreement. MDOC does not waive any defense nor does the County or the Sheriff waive any immunity which may be extended to it by operation of law, including any limitation on the amount of damages.

**SECTION 7.7 Notice of Claims.** Within five (5) working days after receipt of a Summons on Notice of Claim by MDOC or any agent, employee or officer thereof, MDOC shall notify the County or the Sheriff in writing of receipt of such summons or notice. The notice requirement is intended to ensure that the County's and/or Sheriff's defense of the claim is not

Defendants 001936

harmed by failure to comply with any notice requirements. The County and the Sheriff will provide MDOC similar notice of claims.

## ARTICLE VIII
### DEFAULT AND TERMINATION

**SECTION 8.1 Default by MDOC.** Each of the following shall constitute an Event of Default on the part of MDOC:

(a)    **Non-Payment:** Except where such failure is the direct result of non-appropriation of funds as described in Section 8.2 of this Agreement, failure by MDOC to make payments to the County under this Agreement within forty-five (45) days after such payment is due, except for such payments as may be the subject of a valid dispute between the parties and said dispute is being actively negotiated or attempted to be resolved.

(b)    **Other Material Breach.** Except for the obligation to make payments to the County, the persistent or repeated failure or refusal by MDOC to substantially fulfill any of its obligations under this Agreement, unless justified by Force Majeure, or excused by contract or by the default of County and/or Sheriff.

**SECTION 8.2 Termination Due to Unavailable Funds.**

(a)    In the event the State of Mississippi fails to appropriate sufficient moneys for MDOC to pay all of its obligations under this Agreement for any fiscal year, the term of this Agreement shall, at the option of MDOC, expire effective as of the last day of the fiscal year for which sufficient funds for such purpose were appropriated. This Agreement shall remain in full force and effect for succeeding fiscal years notwithstanding any non-appropriation for any prior fiscal year unless this Agreement is terminated by the MDOC in accordance with the first sentence of this Section 8.2.

(b)    MDOC agrees to make an annual good faith effort to have appropriated funds sufficient to pay all amounts due under this Agreement for each fiscal year, and this Agreement is only executory to the extent that funds are so appropriated. In the event sufficient funds to pay all obligations of MDOC hereunder during any fiscal year are not so appropriated, such inability shall not constitute a default under this Agreement. If the funds appropriated in any such legislation are not at least equal to the amounts specified above, or if no funds are appropriated, MDOC shall notify the County within ten (10) days after the end of the Legislative Session in which the Mississippi Legislature fails to appropriate such funds.

**SECTION 8.3 Time to Cure.** If any material breach of this Agreement by either party remains uncured more than thirty (30) days after written notice thereof by the party asserting the breach to the party against which the breach is asserted, such condition shall be an Event of Default.

(a)    In the event a material breach of this Agreement results in the creation of an immediate, emergency life-threatening situation or the safety of the State inmates or the local community and the Sheriff has not moved to correct the breach in a manner appropriate to the

Jefferson-Franklin County Inmate Housing Agreement 2021

16

emergency, MDOC may act to cure the immediate emergency threat and expenses incurred in effectuation such cure and at MDOC's option proceed with termination according to this section. MDOC shall be entitled to recover all its reasonable costs and expenses incurred in curing a breach under this paragraph (a).

    (b)    If the breach cannot be cured within thirty (30) days after notice and such breach can be cured through an on-going effort on the part of the breaching party, the breaching party may, within the thirty (30) day period following the notice of the breach, submit a plan for curing the breach within a reasonable period of time, not to exceed six (6) months, unless extended by the non-breaching party. If the plan is approved by the non-breaching party, the non-breaching party will not pursue remedies hereunder as long as the breaching party timely undertakes to cure the breach in accordance with the approved plan; such approval shall not be unreasonably withheld.

**SECTION 8.4  Remedy.** Upon the occurrence of an Event of Default either party shall have the right to pursue any remedy it may have a law or in equity. including but not limited to: (a) reducing its claim to judgment, (b) specific performance, (c) taking action to cure the Event of Default and (d) termination of the Agreement. In the event that MDOC elects to terminate this Agreement as a result of the County's failure to perform its obligations pursuant to the terms of this Agreement, MDOC may purchase and/or assume operations of the Correctional Facility.

**SECTION 8.5  Default by the County.** The County shall operate and maintain the Correctional Facility in accordance with the ACA accreditation for Standards for Adult Local Detention Facilities, and in compliance with the Act.

If, in the determination of MDOC, the County and/or the Sheriff fail to fulfill in a timely and proper manner its obligations to operate and maintain the Correctional Facility in accordance with the aforementioned standards, MDOC shall have the right to terminate this contract by giving written notice sent by certified mail (return receipt requested) to the County of such termination and specifying the effective date thereof, at least one hundred twenty (120) days before the effective date of such termination. In the event MDOC terminates this Agreement, MDOC shall (1) take over the Correctional Facility, (2) operate the Correctional Facility, and (3) maintain insurance for the Correctional Facility in accordance with 7.3.

**SECTION 8.6  Waiver** No waiver of any breach of any of the terms or conditions of this Agreement shall be held to be a waiver of any other or subsequent breach; nor shall any waiver be valid or binding unless the same shall be in writing and signed by the party alleged to have granted the waiver.

SECTION 8.7  Force Majeure. Each party shall be excused from performance for any period and to the extent that it is prevented from performing any obligation or service, in whole or in part, as a result of causes beyond the reasonable control and without the fault or negligence of such party. Such acts shall include without limitation acts of God, strikes, lockouts, riots, acts of war, epidemics, governmental regulations superimposed after the fact, fire, earthquakes, floods, or other natural disasters ("force majeure events"). When a force majeure event arises, County shall notify the State immediately in writing of the cause of its inability to perform, how it affects its performance, and the anticipated duration of the inability to perform. Delays in

Defendants 001938

delivery or in meeting completion dates due to force majeure events shall automatically extend such dates for a period equal to the duration of the delay caused by such events, unless the State determines it to be in its best interest to terminate the agreement.

**SECTION 8.8 Termination for Convenience.** The Commissioner or designee may, when the interests of the State so require, terminate this contract in whole or in part, for the convenience of the State. The Commissioner or designee shall give written notice of the termination to the County specifying the part of the contract terminated and when termination becomes effective.

## ARTICLE IX
## MISCELLANEOUS

**SECTION 9.1 Disputes.** If the parties are unable to resolve any disputes(s) arising hereunder they may jointly request that the Mississippi Attorney General's Office mediate this matter.

**SECTION 9.2 Compliance with Laws.** The County understands that Mississippi is an equal opportunity employer and therefore, maintains a policy which prohibits unlawful discrimination based on race, color, creed, sex, age, national origin, physical handicap, disability, genetic information, or any other consideration made unlawful by federal, state, or local laws. All such discrimination is unlawful and the County agrees during the term of the agreement that the County will strictly adhere to this policy in its employment practices and provision of services. The County shall comply with, and all activities under this agreement shall be subject to, all applicable federal, State of Mississippi, and local laws and regulations, as now existing and as may be amended or modified.

**SECTION 9.3 Facility Operations/Jail Consultant.** The County may retain an operations/jail consultant to assist the County and the Sheriff in the management of the Correctional Facility.

**SECTION 9.4 Binding Nature.** This Agreement shall not be binding upon the parties until it is approved and executed by the parties. Thereafter, this Agreement shall be binding on the parties and their heirs, successors and assigns.

**SECTION 9.5 Invalidity and Severability.** In the event that any provision of this Agreement shall be held to be invalid, such provision shall be null and void; however, the validity of the remaining provisions of this Agreement shall not in any way be affected thereby.

**SECTION 9.6 Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which shall constitute one Agreement, notwithstanding that all parties are not signatories to the original or the same counterpart, or that signature pages from different counterparts are combined, and the signature of any party to any counterpart shall be deemed to be a signature also and may be appended to any other counterpart.

Defendants 001939

**SECTION 9.7 Interpretation.** The headings contained in the Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**SECTION 9.8 Terminology and Definitions.** All personal pronouns used in this Agreement, whether used in the masculine, feminine, or neuter gender, shall include all other genders; the singular shall include the plural and the plural shall include the singular.

**SECTION 9.9 Venue.** This Agreement shall be interpreted by the laws of the State of Mississippi.

**SECTION 9.10 Release.** The County, upon final payment of the amount due under this Agreement, releases MDOC, its officers and employees, from all liabilities, claims and obligations whatsoever arising from or under this Agreement. The County agrees not to purport to bind MDOC to any obligation not assumed herein by MDOC, unless the County has express written authority to do so, and then only within the strict limits of this authority.

**SECTION 9.11 Amendment.** This Agreement shall not be altered, changed or amended except by mutual consent of the parties in writing.

**SECTION 9.12 Scope of Agreement.** This Agreement incorporates all the agreements, covenants and understandings between the parties hereto concerning the subject matter hereof, and all such covenants, agreements and understandings have been merged into this written Agreement. No prior agreement or understandings, verbal or otherwise, of the parties or their agents shall be valid or enforceable unless embodied in this Agreement.

**SECTION 9.13 Emergency Management Plan.** The County will develop policies and procedures regarding a plan for the transfer of the Correctional Facility to MDOC in the event that labor disputes or any natural disaster makes it unfeasible for the County to perform its duties. Such procedures shall be submitted to and approved by MDOC.

**SECTION 9.14 Existing Agreements.** Nothing in this Agreement abrogates or impairs any other agreement for the confinement, rehabilitation, or treatment of State Inmates now in effect between MDOC and any other State agency or public body.

**SECTION 9.15 Internal Relations.** Nothing in this Agreement affects the internal relations of the parties and their respective departments, agencies, or subdivisions.

**SECTION 9.16 Third Party Rights.** The provisions of this Agreement are for the sole benefit of the parties hereto and shall not be construed as conferring any rights on any other person.

**SECTION 9.17 Budget.** The County shall submit to MDOC, no later than August 1 of each year, an annual budget for the operation of the Correctional Facility for MDOC review and approval.

Defendants 001940

**SECTION 9.18 Notices.** All notices called for or contemplated hereunder shall be in writing and shall be deemed to have been duly given when personally delivered or 48 hours after mailed to the each party by certified mail, return receipt requested, postage prepaid, addressed as set forth below:

Department/MDOC:

Mississippi Department of Corrections
301 N. Lamar Street
Jackson, Mississippi 39201
Attention: Commissioner Burl Cain

The County:

Jefferson-Franklin County, Mississippi
Jefferson County Board of Supervisors
1483 Main Street,
Fayette, Mississippi 39069
Attention: Chancery Clerk

The Sheriff:

Jefferson County, Mississippi
Sheriff's Office
279 Highway 33,
Fayette, Mississippi 39069

[Remainder of page left blank intentionally]

Defendants 001941

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the 1st day of July, 2021.

MISSISSIPPI DEPARTMENT OF CORRECTIONS ("MDOC")

By: _____
Commissioner

ATTEST:

_____
Deputy Commissioner of Finance and Administration

JEFFERSON COUNTY, MISSISSIPPI
(the "County")

By: _____
President, Board of Supervisors

ATTEST:

Serena King
Clerk, Board of Supervisors
By: L. Rankin, D.C.

SHERIFF OF JEFFERSON COUNTY

By: Sheriff James E. Bailey Sr.
Sheriff, Jefferson County, Mississippi

Jefferson-Franklin County Inmate Housing Agreement 2021

21

Defendants 001942

## EXHIBIT A
## REQUEST FOR MANAGEMENT SERVICES

**TO:**  Jefferson-Franklin County Regional Correctional Facility through
Jefferson County, Mississippi

**RE:**  Management Services Agreement dated _____, ____

    The undersigned, pursuant to the captioned contract, authorizes and requests the Jefferson-Franklin County Regional Correctional Facility through Jefferson County, Mississippi to take custody and control of the hereinafter described State Inmate pursuant to the terms of the captioned contract. The undersigned authorizes the Jefferson-Franklin County Regional Correctional Facility through Jefferson County, Mississippi to take reasonable steps necessary to recapture the State Inmate shall the State Inmate escape from custody. Attached are copies of his criminal history, judgment and sentence, and medical history.

Name of State Inmate:_____

Birth Date:_____

Social Security Number:_____

Anticipated Arrival Date:_____

Anticipated Departure Date:_____

                       (Name of Requesting Entity)

                _____

                Its:_____

Jefferson-Franklin County Inmate Housing Agreement 2021

22

## MISSISISSIPPI DEPARTMENT OF CORRECTIONS
## INMATE HOUSING AGREEMENT
## JEFFERSON-FRANKLIN COUNTY REGIONAL CORRECTIONAL FACILITY
## CONTRACT# 8200058158

### SECOND AMENDMENT

**THIS SECOND AMENDMENT** is made and entered into on this the  12  day of August
2024, by and among the **MISSISSIPPI DEPARTMENT OF CORRECTIONS ("MDOC")**, a
statutory agency of the State of Mississippi, located at 301 North Lamar Street, Jackson,
Mississippi 39201 and **JEFFERSON-FRANKLIN COUNTY REGIONAL CORRECTIONAL
FACILITY ("Correctional Facility")** through **JEFFERSON COUNTY, MISSISSIPPI,** a
political subdivision of the State of Mississippi (**"County"**), located at 1483 Main Street, Fayette,
Mississippi 39069 and the **SHERIFF OF JEFFERSON COUNTY, MISSISSIPPI ("Sheriff"),**
279 Highway 33, Fayette, Mississippi 39069 to the Inmate Housing Agreement executed on July 1,
2021. The MDOC, County and Sheriff may be referred to herein collectively as "Parties". The
Parties herein agree to amend the Inmate Housing Agreement as follows:

Section 3.1 is amended to read as follows:

Section 3.1a). The County Management Per Diem Payment.

- a) MDOC shall pay thirty-one dollars and twelve cents ($31.12) per inmate per day for
  the Operation/Management for a capacity of up to two hundred seventy (270) State
  Inmates and twenty two dollars and seventy five cents ($22.75) per State Inmate for
  each State Inmate over two hundred seventy (270).

- c) The Department of Corrections may include in the contract, as an inflation factor, a
  three percent (3%) annual increase in the contract price, **if appropriated by the
  Mississippi State Legislature.** In no event shall any correctional facility's per diem
  rate exceed thirty-two dollars and seventy-one cents ($32.71) per State Inmate. The
  state shall retain responsibility for medical care for state offenders to the extent that is
  required by law.

As set forth in Section 3.5 of the original Agreement, this amendment is also subject to annual
appropriations by the Mississippi State Legislature.

Except as set forth in this Second Amendment, the Inmate Housing Agreement is unaffected and
shall continue in full force and effect in accordance with its terms. If there is a conflict between
this Second Amendment and the Inmate Housing Agreement, the terms of this Second Amendment
shall prevail.

Defendants 001944

**IN WITNESS WHEREOF**, the parties by their duly authorized representatives have executed this Second Amendment with the effective date of July 1, 2024.

MISSISSIPPI DEPARTMENT OF CORRECTIONS
("MDOC")

By: _____
Commissioner of Corrections

ATTEST:

_____
Deputy Commissioner of Administration and Finance

JEFFERSON COUNTY, MISSISSIPPI
("County")

By: _____
President, Board of Supervisors

ATTEST:

_____
Clerk, Board of Supervisors

SHERIFF OF JEFFERSON COUNTY
("Sheriff")

By: _____
Sheriff, Jefferson County, Mississippi