**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**CAROLYN SMITH, et al**                                                             **PLAINTIFFS**

**VS.**                                                       **CAUSE NO. 5:24-cv-0072-DCB-ASH**

**JEFFERSON COUNTY, MISSISSIPPI,
et al**                                                                              **DEFENDANTS**

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Jefferson County, Mississippi, and Sheriff James E. Bailey ("Defendants") file this Memorandum in Support of their Motion for Summary Judgment on Plaintiffs Carolyn Smith, Shaquita McComb, Bonita Blake, Sandra Sanders, and James Ellis Jr.'s ("Plaintiffs") claims against them. In support of this memorandum, Defendants submit the following:

### INTRODUCTION

Plaintiffs are former employees of the Jefferson County Sheriff's Office at the Jefferson-Franklin Regional Correctional Facility (the "Facility"). (Dkt. No. 1, Complaint, paras. 12, 16, 45, 58, 75, 89). Plaintiffs allege they were terminated based on their support of a political candidate who challenged their former boss Sheriff Bailey in the November 2023 general election. (Dkt. No. 1, para. 106). In contrast, Defendants assert the Plaintiffs' employments were terminated based on performance issues. (Dkt. No. 5, Fourteenth Defense, pg. 4). alone.

Plaintiffs have failed to support their allegations with competent summary judgment evidence. Specifically, Plaintiffs failed to demonstrate that Sheriff Bailey had knowledge of what political activities any of the Defendants were engaged in with any candidate, with one exception, Sandra Sanders. In that case, the only political act of speech or conduct was that in this case is that one plaintiff let one candidate put a campaign yard sign in her front yard. However, Sanders

also gave permission for Sheriff Bailey to place his campaign yard sign next to it. (Exh. 1, Sandra Sanders depo., pg. 8, line 16-19). Sanders permitted Sheriff Bailey place a sign in her yard as well. (Sanders, pg. 9, line 16-18). Even then, Sanders noted that Sheriff Bailey did not know who Sanders was voting for, or that the Sheriff even sent anyone to complain about the other candidate's yard sign. *Id.*, pg. 9, line 1 to 12).

Other than that, Plaintiffs made no affirmative acts of conduct or speech regarding any candidate, known to Sheriff Bailey or otherwise, let alone protected First Amendment activity. This point negates the claim that the Sheriff acted to punish the Plaintiffs because of their protected activity. In other words, Sheriff Bailey could not retaliate against the Plaintiffs if he did not know what they were doing.

Further, in two cases, there were legitimate, undisputed and documented reasons leading to the decision not to rehire either Shaquita McComb, or Sandra Sanders. McComb, sixteen months before the decision not to rehire her, was caught bringing into the Facility a hunting knife. (Exh. 2, Shaquita McComb deposition, pg. 21, line 17 to pg. 22, line 11). McComb claimed that a warning was all that came of it. *Id.* However, her personnel file revealed that she not only brought in a hunting knife, but brass knuckles. (Exh. 3, Bates 1454, letter of warning for bringing in brass knuckles and a hunting knife, dated August 24, 2022). Despite McComb stated she only received a verbal warning, she was suspended for two weeks without pay. (Exh. 4, suspension letter from Warden, dated August 31, 2022, Bates 1455). As for Sandra Sanders, she testified that she had suffered a heart attack while transporting an inmate to the hospital in 2018-19, resulting in Sanders being in the intensive care unit of the hospital herself. (Sanders, pg. 21, line 13 to pg. 22, line 2). She further stated that she had been "coded" twice in the event. *Id.* at pg. 21, line 22).

Therefore, there were undisputed reasons for the Sheriff not to rehire these employees, in addition to the point that he did not know about the Plaintiffs' exercise of First Amendment protected activity.

Moreover, Sheriff Bailey is entitled to qualified immunity because of the absence of clearly established law on this specific issue.   In addition, the undisputed facts of this case do not justify punitive damages, and as a matter of Mississippi law, the Plaintiffs have not proven facts sufficient to maintain an intentional infliction of emotional distress claim, and malice does not exist as a Mississippi tort. Consequently, the Court should grant summary judgment dismissal of Plaintiffs' lawsuit.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Sheriff Bailey has served as the Jefferson County Sheriff since January 2020.  He sought reelection in the November 2023 general election. Exh. 5, Sheriff Bailey depo., pg. 8, line 16. Plaintiffs were employed at the Jefferson County Sheriff's Office at the Facility up to and including 2023, but each plaintiff was not re-hired, with their last day being December 31, 2023. *See.,e.g*, Dkt. No. 1, Complaint, para 18 for date of non-rehiring.   In their Complaint, Plaintiffs allege their support of other candidates for sheriff caused their termination. Dkt. No. 1, Complaint, para. 106. But Plaintiffs cannot prove their case based on the evidence in this case.

**I.**      **Political support of another candidate.**

To begin, not one plaintiff actively campaigned for another candidate.   Three of the Plaintiffs did not even support another candidate, according to their own deposition testimony. Two of the Plaintiffs intended to support another candidate at the ballot box, but the facts either do not show that Sheriff Bailey was aware of the support or that he acted upon his knowledge of their

support.  Moreover, other reasons supported the termination of each plaintiff's employment, as the discussion which follows will show.

1. **James Ellis, Jr.**

James Ellis, Jr., was a correctional officer at the Facility.  Exh. 6, Deposition of James Ellis, Jr., pg. 4, line 17-20.  Ellis' cousin, Shon Jones, was a candidate for sheriff against Sheriff Bailey. *Id.*, pg. 7, line 1-4, referencing Ellis' contention about Shon Jones. On a few occasions, Ellis parked his personal vehicle in Jones's driveway.  *Id.*, pg. 6, line 15 to pg. 7, line 14.  But Ellis was not involved with Jones's campaign or any other candidate's campaign, and he did not know whether Sheriff Bailey associated the vehicle parked in Jones's driveway as being Ellis's car, stating instead, only that he saw Sheriff Bailey pass by Shon Jones' driveway where Ellis parked.  *Id.*, pg. 7, line 12-23.  However, Sheriff Bailey never mentioned that he knew Ellis was parking in Jones' driveway.  *Id.*, pg. 7, line 14-18.  No facts show that Ellis supported Jones or that Sheriff Bailey believed Ellis had supported Jones.

2. **Sandra Sanders.**

Sandra Sanders was a correctional officer at the Facility.  Sanders, pg. 5, line 11-14. Sanders had a campaign yard sign for Jones in her front yard.  *Id.*, pg. 8, line 16-21.  That was her only political act of support throughout the election.  *Id.*  A sheriff's deputy confronted Sanders about the yard sign, but she was uncertain whether Sheriff Bailey knew about the yard sign or if he had directed the other deputy to intervene.  *Id.*, pg. 9, line 9-12.  Sanders then told the other deputy that he could put a Sheriff Bailey campaign yard sign in her front yard.  *Id.*, pg. 9, line 16-18. No other facts show Sanders supported Jones or that Sheriff Bailey interfered with Sanders's support of Jones.

Furthermore, Sanders had experienced two major health incidents while serving in her law enforcement role at the Facility.  First, she suffered a heart attack while transporting an inmate for medical treatment.  Sanders, pg. 21, line 13 to pg. 22, line 2   Given her health issues, she was incapable of carrying out her law enforcement duties.

### 3.  Bonita Blake.

Blake was a correctional officer at the Facility.  Exh. 7, Deposition of Bonita Blake,  pg. 5, line 20-22.  Blake's contention about Sheriff Bailey is that she permitted Jones to pump her gas for her on one occasion.  *Id.*, pg. 15, line 4-17.  Someone reported the incident to Sheriff Bailey, who asked Blake if Jones had paid for her gas. *Id.*, pg. 17, line 12-18.  Blake actually told Sheriff Bailey that he had her support in the election.  *Id.*, pg. 17, line 22-24.  Sheriff Bailey had cause to ask about the pumping gas incident, as taking fees in the course of or in connection with work would violated the Facility employee manual.[1]  *Id.*  Blake stated that Jones had merely pumped the gas, not paid for it.  *Id.*  Sheriff Bailey asked Blake if she would support his reelection, and Blake stated she would.  *Id.*  Blake had no other association with Jones.  No facts show that Blake actively supported Jones or that Sheriff Bailey believed Blake had supported Jones.

While Blake stated that "somebody came to me and told me" that the Sheriff was going to drug test her, that comment is hearsay, and did not come from Sheriff Bailey.  *Id.*, pg. 18, line 18-20.  Further, she was not drug tested.  *Id.*, pg. 18, line 20.

On at least two occasions, Blake recalled Warden Kahoe, admonishing Blake for harassing inmates, "probably once or twice."  *Id.*, pg. 13, line 9-12.  Blake also had interpersonal conflicts with Shaquita McComb, which Sheriff Bailey had to deal with in her interview in late 2023 to

---

[1] Exh. 8, Facility Employee Manual, pg. 69 ("The taking of any fee, gift gratuity, or other valuable things in the course of his work or in connection with it for personal gain" was forbidden).

determine whether she would be rehired.  *Id.*, pg. 25, line 5 to 19.  Blake stated that the Sheriff admitted that he had received "too many" complaints about McComb "scandalizing my name," meaning Blake.  *Id.*, pg. 26, line 4-17.

### 4.  Shaquita McComb.

Shaquita McComb was a correctional officer at the Facility. Ex. 2, Deposition of Shaquita McComb, line 9, pg. 15-17.  As to McComb's political involvement, which she claims led to her 2023 non-rehiring, McComb only supported another candidate, Shon Jones, by voting for him. *Id.*, pg. 25, line 13-15.  There is no proof she engaged in any political activity which came to the attention of the Sheriff, because by her only admission, she just voted for Jones.

McComb, sixteen months before the decision not to rehire her, was caught bringing into the Facility a hunting knife.  (Exh. 2, Shaquita McComb deposition, pg. 21, line 17 to pg. 22, line 11).  McComb claimed that a warning was all that came of it. *Id.*  However, her personnel file revealed that she not only brought in a hunting knife, but brass knuckles.  (Exh. 3, Bates 1454, letter of warning for bringing in brass knuckles and a hunting knife, dated August 24, 2022).  Despite McComb stated she only received a verbal warning, she was suspended for two weeks without pay.  (Exh. 4, suspension letter from Warden, dates, August 31, 2022, Bates 1455).  In addition, as noted above, Blake testified about how McComb was defaming Blake in discussions at the Facility, at the very time decisions were being made about rehiring McComb.

### 5.  Carolyn Smith.

Carolyn Smith was a lieutenant at the Facility.  Exh. 9, Deposition of Carolyn Smith, pg. 20, line 4-8**.**  Smith testified that Sheriff Bailey called her into his office to note that others were saying Smith was not supporting him, which she denied, noting "I don't get into election until it's time to get into my own election."  Smith, pg. 20, line 11-12.  On another occasion, Smith took a

picture with Jones and the Adams County Sheriff while at a friend's funeral, but when asked, she told Sheriff Bailey that it didn't indicate her support of Jones. *Id.*, pg. 33, line 5-21. While she attended some candidate forums, she noted she was there "only to listen to candidates." *Id.*, pg. 22, line 8-9. No facts suggest Smith supported Jones or that Sheriff Bailey believed she supported Jones.

In addition, Jefferson County Board of Supervisors President Kelvin King and Sheriff Bailey provided testimony in depositions. In pertinent part, King noted that the Plaintiffs presented their grievances about their non re-hiring at the Facility in January 2024. Exh. 10, Deposition of Kelvin King, pg. 10, line 2-14. There is no proof that Jefferson County had any knowledge of any other times, than the January 2024 complaints about non re-hiring, where the Sheriff had engaged in that activity.

Further, King noted that the Board did not act on the Plaintiffs' grievances about not being rehired at the correctional facility, as the Board "didn't have any jurisdiction over there." King. pg. 10, line 11-14. King elaborated by stating that the Jefferson Franklin Correctional Facility is governed by the Sheriff, and not Jefferson County, as a reason the County did not intervene. King, pg. 20, line 16-19. While Sheriff Bailey gave extensive testimony in response to Smith's counsel's questions, a key item of testimony he gave was that when his Major told him about Saunders' having a Shon Jones campaign sign in her yard, Sheriff Bailey told the Major to leave her alone. Bailey, pg. 103, line 15, 24.

## ARGUMENT

### I.     Standard of Law.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  A party is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Factual controversies are to be resolved in favor of the nonmovant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  The Court does not "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."  *Id.*  To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment."  *Eason v. Thaler*, 73 F .3d 1322, 1325 (5th Cir. 1996).  "[T]he party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).  The existence of genuine issues of material fact will not preclude summary judgment based on qualified immunity if the plaintiff fails to show that unlawfulness of the conduct was "clearly established at the time it occurred."  *Bailey v. Ramos*, 125 F.4th 667, 681 (5th Cir. 2025).

The Fifth Circuit reviews summary judgment rulings *de novo*.  *See Virden v. City of Austin, Texas*, 127 F.4th 960, 965 (5th Cir. 2025).  A denial of qualified immunity at the summary judgment stage is immediately appealable.  *See Samples v. Vadzemnieks*, 900 F.3d 655, 659 (5th

Cir. 2018) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). "Orders granting qualified immunity," however, "are not subject to interlocutory review." *Walton v. City of Verona*, 82 F.4th 314, 321 (5th Cir. 2023) (citing *Elizondo v. Green*, 671 F.3d 506, 509 (5th Cir. 2012)).

## II.    Sheriff Bailey is entitled to qualified immunity on Plaintiffs' First Amendment retaliation claim.

Sheriff Bailey is entitled to qualified immunity against Plaintiffs' claims because clearly established law does not show that Defendants violated Plaintiffs' First Amendment rights based on Plaintiffs' testimony. Importantly, to state a claim of First Amendment retaliation, a plaintiff must show: 1) he was engaged in constitutionally protected activity; 2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and 3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct. *See Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

"The Supreme Court has identified three purposes served by qualified immunity: (1) preventing unwarranted timidity in the exercise of official duties; (2) ensuring that highly skilled and qualified candidates are not deterred from public service by threat of liability; and (3) protecting public employees—and their work—from all of the distraction that litigation entails." *Perniciaro v. Lea*, 901 F.3d 241, 253 (5th Cir. 2018) (citations omitted). If a defendant raises a qualified immunity defense, the plaintiff bears the burden of demonstrating that "(1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011).

"'Clearly established' means that, at the time of the [official's] conduct, the law was sufficiently clear that every reasonable [official] would understand that what he is doing is

unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (cleaned up). "[E]xisting law must have placed the constitutionality of the [official's] conduct 'beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The law must be settled, meaning "it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* at 589-90 (cleaned up).

The "clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019). Plaintiffs are forbidden from "defin[ing] clearly established law at a high level of generality." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). "Clearly established law is determined by controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a *high degree of particularity*." *Delaughter v. Woodall*, 909 F.3d 130, 139 (5th Cir. 2018) (cleaned up) (emphasis added). "The rule's contours must be so well defined that it is 'clear to a reasonable [official] that his conduct was unlawful in the situation he confronted.'" *Wesby*, 138 S. Ct. at 590 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2002)). Thus, it must be so clear that "every reasonable official would interpret it" to preclude the conduct at issue. *Id.* This standard thus protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986); *see Wesby*, 138 S. Ct. at 589 (quoting this portion of *Malley*). In conducting a qualified immunity analysis, courts must separately examine each officer's individual conduct. *See Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007).

To frame the granular constitutional issue presented in this case, it is important to note that: (1) no plaintiff actively campaigned for another sheriff candidate; (2) Sheriff Bailey was either unaware of any efforts by Plaintiffs to campaign against him or did not attempt to interfere with the support of another candidate; and (3) for summary judgment purposes, undisputed facts exist

that Sheriff Bailey terminated the employment of at least three Plaintiffs, those being Shaquita McComb, Bonita Blake, and Sandra Sanders, for legitimate reasons.

Assuming arguendo that in some instances a sheriff does violate the First Amendment for terminating the employment of a subordinate officer for actively campaigning against him, no caselaw clearly established as of December 31, 2023, that Sheriff Bailey violated the First Amendment. Why, is because Plaintiffs did not campaign against Sheriff Bailey at all, and there was no exercise of a constitutionally-protected First Amendment activity which even existed at all, or which Sheriff Bailey knew about, but for Sandra Sanders' road sign. However, even then, Sanders told a Major at the Facility asking about the sign that . Further, to the extent some may have passively "supported" another sheriff candidate, Sheriff Bailey was either unaware of their involvement or chose not to respond to their involvement. There is simply no admissible evidence to prove the Sheriff had any knowledge of their protected constitutional activities to support a claim of retaliation. Thus, Plaintiffs cannot prove the elements of a First Amendment retaliation claim. *See Keenan*, 290 F.3d at 258. An analysis of each Plaintiff follows.

**1. Ellis.**

Ellis did not support another candidate. By his own testimony, he made no expressive conduct. Thus, there was no expressive conduct that could have substantially motivated Sheriff Bailey to terminate Ellis. Consequently, Ellis cannot prove his First Amendment retaliation claim. *See Keenan*, 290 F.3d at 258. Thus, Sheriff Bailey is entitled to qualified immunity and summary judgment on Ellis's claim.

**2. Sanders.**

Sanders is the only plaintiff who made affirmative conduct or speech in support of another candidate based on the summary judgment record. She permitted a campaign yard sign for another

candidate to be placed in her front yard.  However, she did not know whether Sheriff Bailey even sent anyone to her about the yard sign's placement, as a Major Felton asked her about the sign, and not the Sheriff himself. Sanders, pg. 9, line 9-12  Based on Sanders's testimony, she is unable to support her First Amendment retaliation claim.  *See Keenan*, 290 F.3d at 258.

The deputy's actions cannot be imputed to Sheriff Bailey, because courts are required to examine individually each officer's individual conduct. The undisputed facts show Sheriff Bailey told the deputy to leave Sanders alone about the sign.not to interfere. Exh. 5, Deposition of Sheriff James Bailey, pg. 103, line 15, 24.  *See Meadours*, 483 F.3d at 421-22.  Moreover, Sanders's agreement to put yard signs for both candidates in her yard suggests that she was not truly supporting either candidate, which defeats her argument that her speech or conduct resulted in her non-rehiring, in that, her own testimony, her public attitude towards the election was to allow anyone to post a sign in her yard.  And even if this indifference was constitutionally protected speech, it cannot be shown that it substantially motivated Sheriff Bailey to terminate Sanders's employment, because Sheriff Bailey affirmatively told his deputy not to interfere with the issue. And even if Sanders's later termination *could* create a fact issue, that will not defeat summary judgment here, because Plaintiff cannot point to clearly established law at the required level of granular specificity necessary to prove a constitutional violation.  *See Bailey*, 125 F.4th at 681.

Moreover, the evidence shows only that Sheriff Bailey terminated Sanders's employment because she was medically unfit for law enforcement service based on her previous serious health issue.  Accordingly, Sheriff Bailey is entitled to qualified immunity and summary judgment against Sanders's claim.

### 3. Blake.

As noted above, Blake, like Ellis, did not support another candidate. In fact, she told Sheriff Bailey she supported him. And she did not campaign for a candidate. Thus, she made no protected speech or conduct. Consequently, she cannot prove her First Amendment retaliation claim. *See Keenan*, 290 F.3d at 258. Moreover, the evidence shows only that Sheriff Bailey terminated Blake because she was too aggressive with the Facility inmates and she was engaged in interpersonal conflicts with a coworker. Accordingly, Sheriff Bailey is entitled to qualified immunity and summary judgment against Blake's claim.

### 4. McComb.

McComb testified only that she privately "supported" Shon Jones, not that she engaged in any expressive speech or conduct on behalf of Jones's candidacy. Importantly, McComb stated that she was not involved in Jones's campaign activities. All she did was vote for Jones. Thus, even though she believed that Sheriff Bailey was aware of her general "support" of Jones, there is no evidence to suggest that she engaged in any activity protected by the First Amendment. Consequently, McComb cannot prove her First Amendment retaliation claim. *See Keenan*, 290 F.3d at 258. Nor has caselaw established that adverse acts in response to such a low level of generalized "support" by a sheriff's deputy violate the First Amendment. Moreover, the summary judgment record shows only that McComb was fired for her bringing weapons and contraband into the Facility. Thus, Sheriff Bailey is entitled to qualified immunity and summary judgment against McComb's claim.

### 5. Smith.

Smith testified only that she told Sheriff Bailey that she had not yet chosen who she would support in the sheriff's race, not that she was supporting one candidate over another. Importantly,

she testified to no speech or conduct that she asserted was intended to support a candidate other than Sheriff Bailey.  In the absence of affirmative speech or conduct, Smith cannot prove her First Amendment retaliation claim.  *See Keenan*, 290 F.3d at 258.  Nor has caselaw clearly established a First Amendment violation on these facts.  Moreover, the summary judgment record shows only that Smith was fired for defending her niece, Shaquita McComb, for inexplicably bringing weapons and contraband into the Facility, which shows a clear conflict of interest unsuited for the workplace.  Thus, Sheriff Bailey is entitled to qualified immunity and summary judgment against Smith's claim.

In sum, the First Amendment protects expressive conduct, and Plaintiffs did not express themselves in a protected manner based on the summary judgment record.  Three of them appeared indifferent to the election.  Two may have "supported" another candidate, but without any actual involvement in the campaign process.  And only one Plaintiff, Sanders, appeared to act in support of a candidate, by permitting Jones to place a campaign yard sign in her front yard, yet she offered to make the same affirmative act in support of Sheriff Bailey.  This shows that she was not truly engaged in speech, but that she was indifferent to who placed a campaign yard sign in her front yard.  Moreover, Sheriff Bailey directed his deputy not to act on this information.  Thus, even if there was speech or activity in one case, there was no retaliation.  Furthermore, no caselaw has clearly established at the granular level of specificity required to overcome a qualified immunity defense that: (1) Plaintiffs engaged in protected activity; or (2) Sheriff Bailey's termination of their employment was substantially motivated by protected activity.  *See Keenan*, 290 F.3d at 258.  Thus, Plaintiffs are unable to rebut Defendants' qualified immunity defense.  *See Porter*, 659 F.3d at 445.

Moreover, the facts show that Sheriff Bailey was mostly unaware of Plaintiffs' political affiliations.  Again, First Amendment retaliation claims require that the defendant's conduct be

substantially motivated by the expressive conduct. *See Keenan*, 290 F.3d at 258. In the absence of knowledge of the conduct, there can be no motivation to thwart the conduct. Thus, no case has clearly established that a First Amendment violation occurs absent knowledge by the offender of the targeted conduct. Here, because Plaintiffs failed to show they were engaged in protected conduct or that Sheriff Bailey knew they were engaged in such conduct and intended to act upon it, it cannot be shown that Sheriff Bailey retaliated against Plaintiffs in violation of the First Amendment. Consequently, Plaintiffs cannot rebut this defense, so Defendants are entitled to qualified immunity.

### III.    Jefferson County is entitled to summary judgment on Plaintiffs' First Amendment retaliation claim.

Plaintiffs brought their First Amendment retaliation claim against both Defendants, though the allegedly wrongful conduct asserted by Plaintiffs was by Sheriff Bailey alone. This point protects Jefferson County from passive liability from the Sheriff's actions, because claims brought under Section 1983 may not rest on a theory of respondeat superior or vicarious liability. *See Reimer v. Smith*, 663 F.2d 1316, 1323 (5th Cir. 1981).

Moreover, the summary judgment facts do not support a historical pattern of similar activity sufficient to impute these allegedly wrongful actions as being an official policy of Jefferson County itself, so the County cannot be held liable under *Monell*. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009). "Proving a pattern is a heavy burden, one that has rarely been met in our caselaw." *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009). Based on the discussion above regarding qualified immunity, Plaintiffs' failure to show an underlying constitutional violation further requires summary judgment for Jefferson County. *See* Section II.

Furthermore, as noted in Board President Kelvin King's testimony, Jefferson County had no authority to act on the Plaintiffs' complaints, because the County lacked jurisdiction over the Jefferson-Franklin Correctional Facility.  King. pg. 10, line 11-14. President King is legally correct. As the pertinent Mississippi statute notes:

> Concurrent with the execution of a contract for housing of state offenders as authorized by Sections 47-5-931 through 47-5-941, the sheriff of a county where the facility is located is designated as the Chief Corrections Officer for the facility housing state offenders, and in that capacity, shall assume responsibility for management of the corrections facility and for the provision of the care and control of the state offenders housed therein. The sheriff shall be subject to the direction of the department for management of the correctional facility.

> Miss. Code Ann. §47-5-935 (1972), titled "Sheriff as Chief Corrections Officer."

The Mississippi Department of Corrections did contract with Jefferson County and Sheriff James Bailey for the Facility to house state inmates. (Exh. 11, Inmate Housing Agreement). Therefore, the sole party responsible for the management of the Facility is the Sheriff.  Plaintiffs cannot impose Section 1983 liability upon a governmental body with no authority or control over the public officer allegedly responsible for the constitutional infringement.   In that situation, because the County does not control the Sheriff, it cannot incur liability for the Sheriff's actions:

> The counties' lack of authority and control over sheriffs explains why counties have no § 1983 liability for their conduct. For example, if a rogue sheriff adopted an unconstitutional law enforcement policy or practice, the county has no authority to prevent or alter it and, in turn, incurs no § 1983 liability for it. A sheriff's policy or practice cannot be said to speak for the county because the county has no say about that policy or practice. As we have stated before, a county is liable under § 1983 only for acts for which the county is actually responsible.

> *Grech v. Clayton Cty*., 335 F.3d 1326, 1347 (11th Cir. 2003).

Consequently, the Court must dismiss Plaintiffs' First Amendment retaliation claim against Jefferson County.

16

## IV.     The Court must dismiss Plaintiffs' punitive damages claim.

The Court must also dismiss Plaintiffs' request for punitive damages.  To begin, government entities are immune from punitive damages under Section 1983.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271.  Thus, the Court must grant summary judgment on punitive damages asserted against Jefferson County and Sheriff Bailey in his official capacity.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding that official capacity suits against government officers are merely suits against the government entity itself).

To the extent that Plaintiffs seek punitive damages from Sheriff Bailey in his individual capacity,[2] punitive damages may be awarded in Section 1983 cases only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  Reckless indifference has been described by the Supreme Court as "'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to civil obligations.'"  *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999) (citation omitted).  "[U]nlike compensatory damages, punitive damages are never available as a matter of right, no matter how egregious the defendant's conduct may be."  *Hale v. Fish*, 899 F.2d 390, 404 (5th Cir. 1990).

The Fifth Circuit "is deferential to district court determinations regarding punitive damages."  *Heaney v. Roberts*, 846 F.3d 795, 803 (5th Cir. 2017).  It will not generally reverse the district court on punitive damages, "[e]ven if a party has made a showing justifying an award of punitive damages."  *Thompkins v. Belt*, 828 F.2d 298, 302 (5th Cir. 1987).  That is because an "award of punitive damages is a harsh remedy and normally is not favored by law" and its goal "is

---

[2] Plaintiffs' Complaint requests punitive damages against only Jefferson County, Mississippi.  *See* Compl. at 24.  Thus, Plaintiff has waived punitive damages against Sheriff Bailey in his individual capacity.

to punish as well as to deter the commission of similar offenses in the future." *Creamer v. Porter*, 754 F.2d 1311, 1319 (5th Cir. 1985).

Here, Plaintiffs have failed to show that they are entitled to punitive damages. The conduct they attack is that they were not rehired. Plaintiffs' allege in their Complaint that it was caused by their political support of another candidate. But tellingly, Plaintiffs testified that they either did not campaign for another candidate, that Sheriff Bailey was unaware of their benign campaign activities, or that Sheriff Bailey did not act on his knowledge of the campaign activities. No facts show that Sheriff Bailey was motivated by evil intent. *See Smith*, 461 U.S. at 56. In fact, the facts show that several legitimate reasons supported Plaintiffs' termination of employment.

To be sure: (1) Sheriff Bailey suspected Ellis of dealing in contraband at the Facility; (2) Sanders was medically unfit to carry out the rigorous job duties of a law enforcement officer; (3) Blake was too aggressive with Facility inmates and had interpersonal issues with a coworker, namely McComb's defamation of Blake, at the exact time decisions were being made on re-hiring; (4) McComb brought weapons and contraband to the Facility, and according to Blake, said seriously negative things about her in late 2023 which came to Sheriff Bailey's attention; and (5) Smith defended her niece, McComb, against serious and clear violations of the policies against bringing weapons and contraband to the Facility. These terminations certainly were not motivated by a reckless or callous indifference to any right. *See Smith*, 461 U.S. at 56. That is especially clear considering Mississippi is an at-will employment state. *See Swindol v. Aurora Flight Scis. Corp.*, 194 So. 3d 847, 849 (Miss. 2016). Thus, in the absence of contrary facts, the Court is well within its exceptionally wide discretion to dismiss this request. *See Thompkins*, 828 F.2d at 302.

**V.     The state law claim for intentional infliction of emotional distress fails for an insufficiency of facts to support such an extreme claim.**

Plaintiffs allege a state law claim for intentional infliction of emotional distress.  The asserted basis for these claims is that Sheriff Bailey made malicious remarks about Plaintiffs.  But Plaintiffs' deposition testimony is silent on any sort of malicious remarks intended to cause Plaintiffs to experience emotional distress.  Thus, in the absence of this essential evidence, the Court must dismiss these claims.

Moreover, the evidence does not support Plaintiffs' claims.  Intentional infliction of emotional distress requires that the severity of the conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Speed v. Scott*, 787 So. 2d 626, 630 (¶ 18) (Miss. 2001) (quoting *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996)).  Generally, "meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi."  *Id.* at (¶ 19) (quoting *Jenkins v. City of Grenada*, 813 F. Supp. 443, 446 (N.D. Miss. 1993)).  Here, Plaintiffs have failed to put forth competent summary judgment evidence that arrives at this level of horror in general.  However, the Mississippi Supreme Court applies that standard rigorously in the context of employment disputes. To determine whether this case fits that mold, one must examine first their allegations. In this case, giving Plaintiffs every benefit of their testimony, they are alleging that they were not re-hired because of their political activity which was adverse to Sheriff Bailey.   As to Jefferson County, there is no proof the County intended to harm any of the Plaintiffs at all.  They merely acted lawfully to turn the re-hiring issue over to the public officer statutorily obligated to manage the correctional facility.

To examine whether that applies here, the Mississippi Supreme Court case of *Spiers v. Oak Grove Credit, LLC* is instructive. In that case, the *Spiers* Court referred to the standards set out above in setting the stage for their analysis:

> In Mississippi, liability for claims of intentional infliction of emotional distress "does not extend to 'mere insults, indignities, threats, annoyances, petty oppression, or other trivialities.'" *Collins v. City of Newton*, 240 So. 3d 1211, 1220 (Miss. 2018) (quoting *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996)).
>
> . . .
>
> **"damages for intentional infliction of emotional distress are usually not recoverable in mere employment disputes."** *Thomas*, 299 So. 3d at 759 (internal quotation marks omitted) (quoting *Raiola v. Chevron U.S.A., Inc.*, 872 So. 2d 79, 85 (Miss. Ct. App. 2004)). **"Only in the most unusual cases does the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous, as required for the tort of intentional infliction of emotional distress."** *Id.* (internal quotation marks omitted) (quoting *Prunty v. Ark. Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994)).

*Spiers v. Oak Grove Credit, LLC*, 328 So. 3d 645, 653 (Miss. 2021).

The *Spiers* Court then considered what occurred to Speirs in her former employment, where she was terminated for being pregnant, and, at the same time, insulted by being informed by her supervisor that pregnancy was a "disease:"

> In today's case, Spiers asserts that because OGC's supervisor referred to her pregnancy as a disease, and because OGC refused to hire another pregnant person and terminated Spiers for being pregnant, this case rises to the same level of outrageous and revolting behavior found in *Jones*. As noted above, the Court in *Jones* permitted an intentional-infliction-of-emotional distress claim to proceed when a racially charged insult was coupled with a reference to lynching could permit a reasonable juror to conclude that this comment was outrageous and revolting. *Id.* at 1049. Unlike *Jones*, however, Spiers's allegations involve no such threat of violence or similar conduct. Rather, her allegation amounts to a mere unactionable insult. *See Collins*, 240 So. 3d at 1220 (quoting *Pegues*, 913 F. Supp. at 982).

*Spiers*, 328 So. 3d at 653.

Comparing *Spiers* to the Plaintiffs' allegations, while they all share a common allegation that they were terminated for political activity adverse to Sheriff Bailey, none of them alleged that Sheriff Bailey levied any personal insults against them at all.  The record is devoid of any such allegations or facts, let alone arising to the vile epithets found in the case of *Jones v. Fluor Daniel Serv. Corp.*, 959 So. 2d 1044, 1049 (Miss. 2007) as referenced to in *Spiers*, but which will not be repeated here.

Thus, while Plaintiffs have alleged that they were terminated for their political activity, just as Spiers was terminated for being pregnant, that, by itself, does not rise to the level of an intentional tort in Mississippi for intentional infliction of emotional distress.

Moreover, because Defendants previously employed Plaintiffs, they have a qualified privilege to speak freely regarding Plaintiffs.  *See Bush v. Mullen*, 478 So. 2d 313, 314 (Miss. 1985).  "Where qualified privilege exists, a presumption of good faith arises…A plaintiff must present affirmative evidence demonstrating actual malice to defeat the qualified privilege." *Hays v. LaForge*, 333 So. 3d 595, 603 (Miss. Ct. App. 2022) (citations omitted).  Here, Defendants have a qualified privilege against these claims, and Plaintiffs have failed to rebut the presumption of good faith.  Consequently, for both reasons, the Court must grant Defendants summary judgment as to intentional infliction of emotional distress.[3]

---

[3] Because summary judgment is appropriate for Plaintiffs' substantive causes of action, Plaintiffs are unable to pursue declaratory or injunctive relief, and the Court should deny these remedies.  "When, as is the case here, Plaintiff's underlying claim fails, her request for declaratory relief has no merit." *Jeffers v. JP Morgan Chase Bank*, 2016 WL 6901326, at *3 (S.D. Tex. Nov. 22, 2016) (citing *Wheeler v. U.S. Bank National Ass'n*, 2016 WL 554846, at *8 n.53 (S.D. Tex. Feb. 10, 2016)); *Gipson v. Deutsche Bank Nat. Tr. Co.*, 2015 WL 2069583, at *26 (N.D. Tex. May 4, 2015) (rejecting injunctive relief because of denial of underlying cause of action).

**VI.    Malice is not a cause of action in Mississippi, but an "essential element" of intentional infliction of emotional distress instead.**

As for malice, which Plaintiffs plead, it is not a separate cause of action in Mississippi, but is rather, an element of intentional infliction of emotional distress.  As noted by the Mississippi Court of Appeals in 2023, when evaluating such a claim in reference to a suit against a public official under the Mississippi Tort Claims Act:

> Amanda asserted the following state-law claims against Deputy Parker and Sheriff Tucker in their official (and individual) capacities: ***intentional infliction of emotional distress as to Michael, loss of consortium and intentional infliction of emotional distress as to Amanda***, assault and battery as to Michael, and related wrongful death damages.
>
> *The supreme court has explained that "torts in which malice is an essential element are not within the course and scope of employment[,] ... [and therefore] these intentional torts are outside the scope of the MTCA's waiver of immunity, and the MTCA does not apply." Univ. of Miss. Med. Ctr. v. Oliver, 235 So. 3d 75, 82 (¶30) (Miss. 2017)* (citation and internal quotation marks omitted). *Accordingly, "any legal action against a governmental employee" for claims of intentional infliction of emotional distress, assault, and battery "must necessarily proceed against him or her as an individual." Id.*; *see also Thomas v. City of Laurel*, No. 2:19-CV-112-KS-MTP, 2021 WL 1148470, at *8 (S.D. Miss. Mar. 25, 2021)

*Renfroe v. Parker*, 374 So. 3d 1234. 1241 (Miss. 2023) (emphasis supplied).

What *Renfroe* thus stands for is the point that malice is an essential element of several intentional torts, such as intentional infliction of emotional distress, rather than a separate cause of action with its own elements.

<u>**CONCLUSION**</u>

In sum, the undisputed facts in this case show that Defendants are entitled to summary judgment of Plaintiffs' claims against them.  Consequently, the Court should grant summary judgment in this action and dismiss Plaintiffs' lawsuit.

Respectfully submitted, this the 15th day of May, 2025.

**DEFENDANTS JEFFERSON COUNTY, MISSISSIPPI and SHERIFF JAMES E. BAILEY**

**BY: WISE CARTER CHILD & CARAWAY, P.A.**

BY: _/s/ Thomas L. Carpenter_
    THOMAS L. CARPENTER, MB #9808

**OF COUNSEL:**

Thomas L. Carpenter, MB #9808
WISE CARTER CHILD & CARAWAY, PA
2510 14th Street, Suite 1125
Gulfport, Mississippi 39501
Telephone: (601) 867-7141
tlc@wisecarter.com

Jack F. Hall, MB #106482
WISE CARTER CHILD & CARAWAY, PA
401 E. Capitol Street, Suite 600
Post Office Box 651
Jackson, Mississippi 39205
Telephone: (601) 968-5509
jfh@wisecarter.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing pleading with the Clerk of the Court using the EFC system which sent notification of such filing to all counsel of record.

SO CERTIFIED: May 15, 2025.

_/s/ Thomas L. Carpenter_
THOMAS L. CARPENTER